```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

```
DIANA and JOHN DUKICH            :    CIVIL ACTION
                                 :
         v.                      :
                                 :
IKEA US RETAIL LLC, et al.       :    NO. 20-2182
```

MEMORANDUM

Bartle, J.                                    January 14, 2021

Plaintiffs Diana and John Dukich ("plaintiffs") have sued defendants IKEA US Retail LLC and IKEA North America Services LLC ("IKEA") in this putative class action brought under the Class Action Fairness Act, 28 U.S.C. § 1332(d), for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. C.S. § 201-1 et seq., and for negligence. These counts arise from plaintiffs' purchase of two IKEA dressers that were later recalled by IKEA and for which plaintiffs allege they have never received the refund IKEA promised.

Before the court is the motion of IKEA to dismiss plaintiffs' amended complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and because of the primary jurisdiction of the United States Consumer Product Safety Commission ("CPSC"). In the

alternative, IKEA moves to strike the class allegations of any claim that is not dismissed.

I.

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

On a motion to dismiss under Rule 12(b)(6), the court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). The court may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." Buck v.

Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

II.

For present purposes, the court accepts as true the following allegations set forth in the amended complaint. IKEA is a major retail chain which designs and sells furniture. Plaintiffs are a husband and wife couple with two young children who purchased two four-drawer dressers of the MALM model from IKEA for approximately $100 each in or around 2012.

By June 28, 2016, IKEA knew of two deaths and thirteen injuries from tip-over accidents involving the MALM line of dressers as well as deaths and injuries from other chests and dressers. That day IKEA issued a voluntary recall ("2016 recall") with the CPSC for 29 million chests and dressers including the MALM series which plaintiffs had purchased.

The 2016 recall announcement stated that "[t]he recalled chests and dressers are unstable if they are not properly anchored to the wall, posing a serious tip-over and entrapment hazard that can result in death or injuries to children." IKEA offered either a repair or refund. The repair program included a free wall-anchoring repair kit which purchasers can either install themselves or have IKEA install one time for free upon request. In the alternative, IKEA

offered a full refund for chests and dressers manufactured between 2002 and 2016.  Purchasers of products that were manufactured prior to January 2002 were eligible for partial store credit.

By November 21, 2017, IKEA had become aware of another death of a child from a MALM dresser tip-over and ninety-one more injuries, as well as deaths and injuries from other models of dressers.  IKEA re-announced the recall on November 21, 2017 ("2017 recall") which subjected 17.3 million dressers to recall and instructed consumers to "immediately stop using any recalled chest or dresser that is not properly anchored to the wall and place it in an area that children cannot access."  In the 2017 recall, IKEA provided the same two options for either refund or a free wall-anchoring kit and specified that it will "pick up the recalled dressers free of charge or provide a one-time, free in-home wall-anchoring service" upon request.

In August 2018, plaintiffs visited the return section of an IKEA retail store near their home in Minnesota to return their dressers, which were subject to both the 2016 and 2017 recalls, for a cash refund in the amount of the purchase price of approximately $200.  Plaintiffs allege that IKEA refused to accept the dressers, give plaintiffs $200 in cash as a refund, or provide any alternative refund.  Plaintiffs have stored the dressers in their garage since then due to the recalls.

Plaintiffs bring this action seeking certification of the proposed class, a full cash refund, damages for returning or disposing of the recalled products, and direct notification by IKEA to all class members of the defective nature of the chests and dressers. Plaintiffs do not seek damages for personal injuries or diminution in the value of the dressers.

III.

The basis for this action relates to IKEA's failure to issue a refund to plaintiffs and comply with the terms of the 2016 and 2017 recalls. Specifically, plaintiffs claim that IKEA violated the UTPCPL by engaging in unfair or deceptive acts or practices in promising refunds and failing to issue such refunds.[1] In addition, plaintiffs aver that IKEA acted negligently in voluntarily undertaking a recall and then failing to abide by its terms.

At oral argument, the parties agreed that this action solely relates to the 2016 and 2017 recalls and plaintiffs' attempt to secure a refund for their recalled dressers. IKEA now concedes that plaintiffs' amended complaint states claims

---

1. The fact that plaintiffs are not residents of Pennsylvania does not preclude this action. The Pennsylvania Supreme Court has held that non-Pennsylvania residents may bring an action under the UTPCPL against Pennsylvania-based businesses for deceptive practices which occurred in other jurisdictions. See Danganan v. Guardian Prot. Servs., 179 A.3d 9, 16-17 (Pa. 2018).

for relief under the UTPCPL and for negligence as relates to the refund and recalls.

It is important to note that plaintiffs' claims may proceed under the UTPCPL and a theory of negligence even though plaintiffs only plead economic injury. Our Court of Appeals previously held in Werwinski v. Ford Motor Co. that "[t]he economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" 286 F.3d 661, 671 (3d Cir. 2002) (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995)). The Court of Appeals in Werwinski upheld the district court's decision that the economic loss doctrine applies to statutory fraud claims, in that case UTPCPL claims, as well as common law fraud claims. Id. at 681.

At the time that Werwinski was decided, the Pennsylvania Supreme Court had not yet spoken on the issue of whether the economic loss doctrine applies to cases of intentional fraud. Id. at 670. However, the case law in Pennsylvania has evolved since Werwinski was decided. In 2013, the Pennsylvania Superior Court determined in Knight v. Springfield Hyundai that the economic loss doctrine does not preclude claims brought under the UTPCPL even if the injury was purely economic since the economic loss doctrine relates solely to negligence. 81 A.3d 940, 952 (Pa. Super. 2013).

The Pennsylvania Supreme Court in 2018 explained in Dittman v. UPMC that "under Pennsylvania's economic loss doctrine, recovery for purely pecuniary damages is permissible under a negligence theory provided that the plaintiff can establish the defendant's breach of a legal duty arising under common law that is independent of any duty assumed pursuant to contract." 196 A.3d 1036, 1038 (Pa. 2018). Thus, if the duty arises pursuant to a contract, then a tort action will not be allowed, but "if the duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action." Id. at 1054.

Furthermore, the Supreme Court held that previous Supreme Court cases[2] "do not stand for the proposition that the economic loss doctrine, as applied in Pennsylvania, precludes all negligence claims seeking solely economic damages." Id. Rather, since the plaintiffs in Dittman had sufficiently pleaded that defendant had a common law duty to act with reasonable care, a duty which existed independently from any contractual obligations between the parties, then "the economic loss doctrine does not bar [plaintiffs'] claims." Id. at 1056.

---

2. See Excavation Techs., Inc. v. Columbia Gas Co. of Pa., 985 A.2d 840 (Pa. 2009); Bilt-Rite Contractors, Inc. v. Architectural Studio, 866 A.2d 270 (Pa. 2005).

Thus, Pennsylvania law has moved beyond the law at the time Werwinski was decided.  The economic loss doctrine does not bar plaintiffs' suit in this instance since this is not a matter based on contractual duties between the parties.  Plaintiffs' claims only focus on the recalls IKEA issued and the refund that plaintiffs allege IKEA failed to provide.  Neither the recall nor refund are based on any contractual obligations between the parties.  According to the amended complaint, defendant IKEA US Retail LLC sold plaintiffs the dressers while IKEA North American Services LLC issued the 2016 and 2017 recalls which offered the refund.  As plaintiffs have pleaded common law and statutory duties independent from any contractual obligations between the parties, the economic loss doctrine does not bar these claims.  Accordingly, plaintiffs' claims under the UTPCPL and for negligence may proceed as pleaded at this stage.[3]

---

3. Plaintiffs bring this action before this court under the Class Action Fairness Act which provides district courts with original jurisdiction over class actions, subject to certain requirements.  28 U.S.C. § 1332(d).  Among those requirements are the provisions that the matter in controversy must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs," and the action must have minimal diversity whereby "any member of a class of plaintiffs is a citizen of a State different from any defendant" or either a plaintiff or defendant is a citizen or subject of a foreign state.  28 U.S.C. § 1332(d)(2).  Should plaintiffs fail at any point to meet these requirements this court will no longer have subject matter jurisdiction over plaintiffs' claims.

IV.

IKEA seeks dismissal of this action on the ground that the doctrine of primary jurisdiction favors deferring to the CPSC since the CPSC is overseeing IKEA's recalls and this suit is within the specific expertise of the CPSC. Plaintiffs counter that this is not one of the special or unusual cases in which deferring to an agency is appropriate, especially since the relief plaintiffs seek does not conflict with the CPSC's actions.

Primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claims requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." Baykeeper v. NL Industries, Inc., 660 F.3d 686, 691 (3d Cir. 2011) (quoting United States v. W. Pac. R.R. Co., 352 U.S. 59, 64 (1956)). Courts have looked to the following four factors to determine if primary jurisdiction is appropriate:

> (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made.

Id.  However, our Court of Appeals has cautioned that federal courts should only abstain from exercising their jurisdiction in exceptional cases.  Id. at 692.  "Federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" Id. at 691 (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)).

This is not one of those exceptional cases.  The court is well-suited for determining whether IKEA has violated the UTPCPL or acted negligently.  This case does not involve overly technical or policy considerations that demand the expertise of the CPSC.  Furthermore, IKEA has not pointed the court to any law or regulation that the CPSC is even capable of providing a remedy for plaintiffs in this instance other than revoking the recall plan if IKEA is found to be non-compliant with the terms of the recall.  The CPSC cannot offer plaintiffs the refund that they seek in this suit or award damages.  Thus, this issue is not within the CPSC's particular jurisdiction nor is there a risk of inconsistent rulings between the CPSC and this court as we have vastly different tools available to us to address the claims asserted.  There is nothing before this court to support abstention in favor of granting primary jurisdiction to the CPSC.

V.

IKEA also moves to strike the class allegations set forth in plaintiffs' amended complaint.  Plaintiffs seek to represent a class of all United States residents who purchased or owned any chest or dresser included in the 2016 and 2017 recalls, regardless of whether those consumers sought a refund or repair kit under the terms of the recall and were denied like plaintiffs.  IKEA argues that the amended complaint indicates that even with discovery plaintiffs will be unable to establish claims of the other members of the class without individual investigations into the circumstances of each class member.  Plaintiffs argue in response that IKEA's motion to strike is premature since discovery has not yet been conducted and these issues should be allowed to play out through the class certification process.

A class may only be certified if the four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are satisfied:

> (a) Prerequisites.  One or more members of a
>     class may sue . . . as representative
>     parties on behalf of all members only if:
>
>     (1) the class is so numerous that joinder
>         of all members is impracticable;
>
>     (2) there are questions of law or fact
>         common to the class;

>  (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
>  (4)  the representative parties will fairly and adequately protect the interests of the class.

There are also various requirements under Rule 23(b) that must be satisfied.

The court must conduct a "rigorous analysis," including considering all relevant evidence and arguments presented, when deciding whether to certify a class. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 315-16 (3d Cir. 2008). We possess "broad discretion to control proceedings and frame issues for consideration under Rule 23." Id. at 310. "In most cases, some level of discovery is essential to such an evaluation." Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 (3d Cir. 2011).

The dismissal of plaintiffs' class allegations is premature at this early stage. We are mindful of the analysis of the Court of Appeals in Landsman & Funk PC v. Skinder-Strauss Associates where the district court's dismissal of class certification at the motion to dismiss stage was reversed. Id. In this matter discovery would help determine the contours and nature of the class and whether plaintiffs have met the requirements of Rule 23.

At oral argument, the court raised the concern about the difficulty of maintaining a nationwide class action for a state law negligence claims because of the necessary choice of law analysis for each member of the class.  We also raised questions as to the exact definition of the purported class and whether the proposed class members will have sufficient factual similarities with he named plaintiffs so as to satisfy all requirements for certification under Rule 23.  See e.g., Marcus v. BMW of N. Am., LLC, 687 F.3d 583 (3d Cir. 2012).  There is also a question of the ascertainability of the class and whether IKEA possesses sufficient records or plaintiffs have other means of readily identifying members of the class.  Id. at 593.  These are just some of the issues with which plaintiffs will have to deal at the class certification stage.

We do not reach any conclusions on these issues at this time.  This court will be in a better position to determine whether the requirements of the Class Action Fairness Act and Rule 23 have been met once plaintiffs file a motion for class certification and appropriate discovery has been conducted.  The court will deny IKEA's alternative motion to strike plaintiffs' class allegations without prejudice.  Plaintiffs must promptly file a motion for class certification at which point this court will schedule a conference with counsel to discuss the scope of discovery.