IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANA and JOHN DUKICH, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| IKEA US RETAIL LLC, et al. | : | NO. 20-2182 |

MEMORANDUM

Bartle, J.                                                September 13, 2022

Plaintiffs Diana and John Dukich, Audra Andrews, Janet Bou, Ana Medina, Samantha Meyers, Christine Ross, Chelsey Sinclair, Christopher Slater, Keri Strauch, Jason Thompson, and Erin Wallace all purchased furniture from defendants IKEA US Retail LLC and IKEA North America Services LLC ("IKEA") that are the subject of a recall issued by IKEA.[1] They bring this putative class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. C.S. § 201-1 et seq., and for negligence. They seek property damages related to the refund process.

---

1. Diana and John Dukich initially brought this suit as the only named plaintiffs on behalf of themselves and others similarly situated. The remaining named plaintiffs joined the action after this court granted their motion to intervene on April 19, 2021. See Dukich v. IKEA US Retail LLC, 2021 WL 1534520 (E.D. Pa. April 19, 2021).

Before the court is the motion of IKEA for summary judgment against Diana and John Dukich, Christine Ross, Christopher Slater, Jason Thompson, and Erin Wallace.

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). We view the facts and draw all inferences in favor of the nonmoving party. See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

Summary judgment is granted when there is insufficient record evidence for a reasonable factfinder to find for the nonmovant. See Anderson, 477 U.S. at 252. "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." Id. In addition, Rule 56(e)(2) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by

Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

II

The facts are taken in the light most favorable to plaintiffs as the nonmoving party. IKEA is a major retail chain that designs and sells furniture. On June 28, 2016, IKEA announced, in connection with the U.S. Consumer Product Safety Commission ("CPSC"), a voluntary recall ("2016 recall") for 29 million chests and dressers after learning about multiple deaths and injuries from tip-over incidents involving these chests and dressers. This recall included the MALM dresser line. The 2016 recall announcement stated that "[t]he recalled chests and dressers are unstable if they are not properly anchored to the wall, posing a serious tip-over and entrapment hazard that can result in death or injuries to children."

The 2016 recall advised consumers to stop using the recalled products immediately and to put them in a place without child-access. It stated that "[c]onsumers are entitled to a full refund for chests and dressers manufactured between January 2002 and June 2016. Consumers with chests and dressers manufactured prior to January 2002 will be eligible for a partial store credit." The 2016 recall provided ways to contact IKEA to participate in the recall or obtain additional information. It also described ways to order and install a free

wall-anchoring kit. Both the CPSC and IKEA announced the recall on their websites.

Before announcing the 2016 recall, IKEA entered into a "corrective action plan" ("CAP") with the CPSC on June 15, 2016. The CAP covers all MALM and non-MALM chests and dressers in specified sizes that do not comply with safety performance requirements.[2] The remedies listed in the CAP for the recall provide that IKEA will refund the purchase price as follows:

    a. refund for the full purchase price of the Subject Products (i) for all MALM Subject Products, and (ii) for all non-MALM Subject Products manufactured after January 1, 2002;

    b. store credit for 50% of the purchase price for non-MALM Subject Products manufactured before January 1, 2002; or

    c. store credit for $50 if the original price cannot be identified.

The CAP stated that IKEA would notify customers by issuing a joint press release with the CPSC, posting recall notices in stores, posting recall notices on social media platforms using its "top tier" social media accounts, sending recall notices to consumers and retailers, and sending emails to purchasers of the subject products.

---

2. MALM refers to a specific model of IKEA chests and dressers. The recall also included several other models of chests and dressers, which are referred to as non-MALM chests and dressers.

-4-

After learning about more injuries and another death from a dresser tip-over, IKEA re-announced the recall on November 21, 2017 ("2017 recall") which subjected 17.3 million dressers to recall and again instructed consumers to "immediately stop using any recalled chest or dresser that is not properly anchored to the wall and place it in an area that children cannot access." The 2017 recall again provided information on how to contact IKEA to obtain a refund or a wall-anchoring kit.

Plaintiffs Diana and John Dukich ("the Dukich plaintiffs") purchased two four-drawer MALM dressers in or around April 2013. John Dukich testified that they paid about a hundred dollars apiece. On June 28, 2016, Diana Dukich emailed an article discussing the 2016 recall announcement to herself and John Dukich. The following year, on June 20, 2017, John Dukich contacted IKEA via e-mail about the recall and asked what was needed to obtain a full refund. He does not remember taking any other actions with respect to the recall before that date.

On June 21, 2017, IKEA responded and told him to "immediately stop using any recalled chest or dresser that is not properly anchored to the wall and place in an area not accessible to children." It advised that he could return his

merchandise "as-is" to any IKEA store and that "[n]o receipt is required." The e-mail stated that IKEA would provide

> 1) a full refund if the chest or dresser was manufactured between January 1, 2002 and June 28, 2016; 2) a store credit for 50% of the original purchase price if the product was manufactured before January 2002; or 3) a $50 store credit if the date stamp is unidentifiable.

John Dukich testified that he read and understood the e-mail.

In or around August 2018, the Dukich plaintiffs attempted to return their dressers to an IKEA store and requested a refund. The store clerk asked if they had a receipt or a sticker label for the dressers to determine the date they were manufactured. They did not have either. They were told they could not get a full refund and were offered partial store credit or two wall-anchoring kits for their dressers. The Dukiches refused the partial store credit, and they returned home with their dressers and two wall-anchoring kits. They stored the dressers in their garage until their attorneys in this litigation took possession of them. After commencing this case, the Dukich plaintiffs identified credit card statements that approximated the date they purchased the dressers and found that their dressers qualified for a full refund.

Plaintiff Christopher Slater purchased a chest and a dresser that were subject to the recall. IKEA sent two emails to Mr. Slater's personal email address--first on August 16, 2017

-6-

and a second time on March 7, 2020--to notify him of the recall. Although Mr. Slater testified that he did not recall receiving or reading either email, it is undisputed that IKEA's records show that Mr. Slater opened the August 16, 2017 email on the same day and followed a link included in the email to the recall website.  Mr. Slater owned the chest and dresser for six years, and he never tried to participate in the recall.

Plaintiff Christine Ross purchased two MALM dressers that were subject to the recall.  Although Ms. Ross testified that she was not aware of the recall until she learned about this litigation, Ms. Ross does not dispute that IKEA sent an email notifying her of the recall on March 7, 2020 to the email address she provided IKEA.  Ms. Ross never tried to participate in the recall.

Plaintiff Jason Thompson bought three dressers from IKEA in 2014.  Mr. Thompson did not have a receipt for this purchase, but two of the dressers had date stamp labels showing that they were subject to the recall.  Mr. Thompson testified that he learned of the recall through a website promoting this litigation.  Although Mr. Thompson learned that he qualified for compensation and searched for information about the recall, he did not visit the IKEA website or discuss the recall with anyone from the store.  It is undisputed that IKEA sent an email on August 16, 2017 notifying the Thompsons of the recall to

Mr. Thompson's wife on the personal email address that Mr. Thompson provided to IKEA. Mr. Thompson never tried to participate in the recall.

Plaintiff Erin Wallace purchased a MALM dresser in 2013 with a date stamp showing that it is subject to the recall. Ms. Wallace testified that she became aware of the recall from a website promoting this litigation.  It is not in dispute that IKEA sent an email to Ms. Wallace on July 14, 2016, which she first opened on the day it was sent and opened again on July 16, 2016.  Ms. Wallace never tried to participate in the recall.

III

Defendants seek summary judgment on Count I, in which plaintiffs bring a claim under the UTPCPL.  Plaintiffs allege that IKEA violated the UTPCPL by failing to notify plaintiffs of the recall and failing to comply with the terms of the recall.

UTPCPL provides a private right of action for any person who:  (1) "purchases or leases goods or services primarily for personal, family or household purposes" and (2) "suffers any ascertainable loss of money or property, real or personal" (3) due to unfair methods of competition or other unfair or deceptive acts and practices covered by the law. 73 P.S. § 201-2.  In addition to the behaviors enumerated in the law, these acts and practices can include "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood

of confusion of or misunderstanding." 73 P.S. § 201(4)(xxi). The losses suffered by the plaintiff cannot be speculative. Kaymark v. Bank of America, N.A., 783 F.3d 168, 180 (3d Cir. 2015).

To succeed in a UTPCPL action, a plaintiff "must identify the specific act, omission or misrepresentation" of a defendant's conduct. Doherty v. Allstate Indem. Co., 2016 WL 5390638, at *6 (E.D. Pa. Sept. 27, 2016). A plaintiff must also meet the causation requirement by showing "justifiable reliance, not simply a causal connection between the misrepresentation and the harm." Hunt v. U.S. Tobacco Co., 538 F.3d 217, 222 (3d Cir. 2008). The justifiable reliance requirement applies to all provisions of the UTPCPL. Id. at 224. A plaintiff can establish justifiable reliance by showing that he or she "acted, or failed to act, in response to and as a result of the defendant's wrongful conduct." Mellish v. CACH, LLC, 2020 WL 1472405, at *5 (W.D. Pa. March 26, 2020).

Defendants also seek summary judgment on Count II, in which plaintiffs allege that IKEA carried out the recall negligently. Under Pennsylvania law, one who undertakes an affirmative conduct is "under a duty to others to exercise the care of a reasonable man." Dittman v. UPMC, 196 A.3d 1036, 1046 (Pa. 2018). This principle applies in the context of a recall. A company that voluntarily implements a recall owes a duty to

-9-

its customers to carry out the recall with ordinary care. See Restatement (Third) of Torts: Prod. Liab. § 11 (1998). If a company is negligent in failing to carry out a voluntarily assumed recall, a customer has a cause of action for injuries sustained as a result of the company's negligence. See Blossman Gas Co. v. Williams, 375 S.E.2d 117, 120 (Ga. Ct. App. 1988).

Defendants argue that the Dukich plaintiffs were aware of the remedies available to them under the CPSC approved recall and that IKEA offered the Dukich plaintiffs the remedies to which they were entitled. Defendants assert that, as a result, IKEA did not engage in any misleading or deceptive behavior, nor was IKEA negligent in how it carried out its recall policy.

IKEA's recall policy provided customers with four choices: (1) obtain a wall anchoring kit; (2) request that an IKEA representative anchor the dressers to the customer's wall for free; (3) return the dressers to IKEA for a refund; or (4) request that IKEA pick up the dressers from their home for free and return the dressers for a refund. Under the CPSP-approved recall, customers seeking a full refund under the third or fourth option must be able to show--using either a receipt or date stamps on the furniture--that their dressers were manufactured between January 1, 2002 and June 28, 2016. If a customer cannot show that their purchases qualify under the

recall because they do not have a receipt and there is no legible date stamp, they can receive partial store credit.

Mr. Dukich admitted to receiving, reading, and understanding an email IKEA sent him on June 20, 2017, which explicitly described this policy and stated that he could receive "a $50 store credit if the date stamp was unidentifiable." Consistent with IKEA's recall policy, the Dukich plaintiffs were offered partial store credit when they sought a refund from the store because they did not have a receipt or date stamp that could identify when their dressers were manufactured. At that time, they had no other way to prove the date on which they purchased their dressers. Although they refused to accept the partial store credit, the Dukich plaintiffs accepted two wall-anchoring kits, a different remedy available under the recall policy. Furthermore, the Dukich plaintiffs can still return their dressers to an IKEA store for a full refund now that they have credit card statements dating their purchases. Given these facts, the Court agrees that there is no evidence that IKEA violated the UTPCPL. IKEA made no misleading or deceptive statements promising the Dukich plaintiffs a full refund. Likewise, there is no evidence that IKEA acted negligently in failing to provide the Dukich plaintiffs a full refund.

Defendants argue that IKEA notified personally the remaining plaintiffs, Christine Ross, Christopher Slater, Jason Thompson, and Erin Wallace, about the recall by sending emails containing information about the recall to their personal email addresses. These plaintiffs all concede that they received the notices. The defendants assert that, as a result, IKEA did not act deceptively or misleadingly, nor did IKEA act negligently, in how it notified these plaintiffs of the recall.

IKEA sent Ms. Ross an email about the recall to her personal email address on March 7, 2020. IKEA sent Mr. Slater two emails about the recall--one on August 16, 2017 and another on March 7, 2020--to his personal email address. In fact, Mr. Slater opened the first email the day it was sent, and he clicked the link in the email to a website with more information about the recall. IKEA sent an email to Mrs. Thompson, whose email was provided to IKEA by Mr. Thompson, about the recall on August 16, 2017. Finally, IKEA sent an email to Ms. Wallace about the recall to her personal email address on July 14, 2014. She opened the email on the day it was sent and opened it again two days later.

IKEA sent all four of these plaintiffs emails about the recall to their personal email addresses. Although two of these plaintiffs, that is Ms. Ross and Mr. Thompson, did not open these emails, that is not the fault of IKEA. IKEA provided

-12-

adequate notice to these plaintiffs. They have provided no evidence that IKEA violated the UTPCPL by acting misleadingly or deceptively and no evidence that IKEA acted negligently.

Accordingly, this motion of defendants IKEA US Retail LLC and IKEA North America Services LLC for summary judgment in their favor and against plaintiffs Diana Dukich, John Dukich, Christine Ross, Christopher Slater, Jason Thompson, and Erin Wallace will be granted.