IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DIANA and JOHN DUKICH, et al.       :          CIVIL ACTION
                                    :
            v.                      :
                                    :
IKEA US RETAIL LLC, et al.          :          NO. 20-2182


MEMORANDUM

Bartle, J.                                     December 20, 2022

          Plaintiff Samantha Meyers purchased furniture from

defendants IKEA US Retail LLC and IKEA North America Services

LLC ("IKEA") that is subject to a recall announced by IKEA in

coordination with the U.S. Consumer Product Safety Commission

("CPSC").[1]  She brings this putative class action against IKEA

under the Class Action Fairness Act, 28 U.S.C. § 1332(d), for

violation of the Pennsylvania Unfair Trade Practices and

_____

1.    Diana and John Dukich initially brought this suit as the
only named plaintiffs on behalf of themselves and others
similarly situated.  Then 10 additional plaintiffs joined the
action after the court granted their motion to intervene on
April 19, 2021.  Dukich v. IKEA US Retail LLC, 2021 WL 1534520
(E.D. Pa. April 19, 2021).  Since then, two intervening
plaintiffs voluntarily dismissed their claims after failing to
provide discovery, and the court dismissed the claims of six
plaintiffs for failing to identify evidence that IKEA acted
deceptively or negligently toward them.  Dukich v. IKEA US
Retail LLC, No. CV 20-2182, 2022 WL 4237485, at *5 (E.D. Pa.
Sept. 13, 2022).  Of the four remaining plaintiffs, three are
omitted from the class definition, leaving Meyers as the sole
class representative.

Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-1 et seq., and for negligence.

Before the court is Meyers's motion to certify, under Rule 23(b)(3) of the Federal Rules of Civil Procedure, a class consisting of every IKEA customer in the United States and its territories:  (1) who had no notice of the recall prior to May 6, 2020; (2) who possesses at least one IKEA chest or dresser subject to the recall at the time of class notice; and (3) for whom IKEA had an email address as of October 7, 2022.

I

The Class Action Fairness Act provides district courts with subject matter jurisdiction over class actions in which the amount of controversy exceeds $5,000,000 and there is minimal diversity of citizenship, that is any member of the purported class is a citizen of a different state from any defendant. 28 U.S.C. § 1332(d)(2).  The court can decline to exercise jurisdiction over the class if greater than one-third of the purported class members are citizens of the state in which the action was brought and must decline jurisdiction if those members exceed two-thirds of the class.  28 U.S.C. § 1332(d)(4).

This action has met the jurisdictional requirement under the Class Action Fairness Act.  IKEA has approximately 19.5 million email addresses for customers who opted out of receiving marketing email communications.  Among these email

addresses, plaintiffs state that at least 500,000 are for
customers who purchased recalled furniture but did not receive
email notice of the recall.  If each item purchased by these
customers cost more than $10, the $5,000,000 threshold would be
met.  The recalled furniture was sold at prices between $70 and
$200.  Thus, the threshold amount has been satisfied.  In
addition, IKEA has stores throughout the country.
Pennsylvania's population is 3.9 percent of the total United
States population, so that it is highly likely that fewer than
one-third of the proposed class would be Pennsylvania citizens.

          The minimal diversity requirement has also been met.
Meyers is a citizen of North Carolina.  IKEA US Retail LLC and
IKEA North America Services LLC are both Virginia limited
liability companies that are headquartered in Pennsylvania.  A
limited liability company shares the citizenship of all its
members.  See Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412,
420 (3d Cir. 2010).  If one of its members is another limited
liability company, then its citizenship must be traced through
that company's members.  Id.  Neither defendant has a member who
is a citizen of North Carolina.  Consequently, there is minimum
diversity between the parties and the court has subject matter
jurisdiction over the action.

                                   II

          IKEA, a major retail chain headquartered in

Pennsylvania, designs and sells furniture.  On June 28, 2016,

IKEA announced, in connection with CPSC, a voluntary recall

("2016 recall") for 29 million chests and dressers, including

the MALM dresser line,[2] after learning about multiple deaths and

injuries from tip-over incidents involving these chests and

dressers.

          The recall advised consumers to stop using the

recalled products immediately and to put them in a place without

child-access.  It offered a full refund to consumers who

purchased chests and dressers manufactured between January 2002

and June 2016 and partial store credit to consumers who

purchased chests and dressers manufactured prior to January

2002.  For consumers who did not want to return their purchase,

the recall offered a free wall-anchoring kit that would prevent

tip-over incidents and free installation of the kit by IKEA

employees.  The recall described how consumers could obtain

refunds or wall-anchoring kits and contact IKEA for additional

information.  Both the CPSC and IKEA announced the recall on

their websites.

_____

2.   MALM refers to a specific model of IKEA chests and
dressers.  The recall also included several other models of
chests and dressers, which are referred to as non-MALM chests
and dressers.

                                  -4-

Before announcing the 2016 recall, IKEA entered into a
"corrective action plan" ("CAP") with the CPSC on June 15, 2016.
The CAP covers all MALM and non-MALM chests and dressers in
specified sizes that do not comply with safety performance
requirements.  The remedies listed in the CAP for the recall
provide that IKEA will refund the purchase price as follows:

> a.  refund for the full purchase price of the
>     Subject Products (i) for all MALM Subject
>     Products, and (ii) for all non-MALM Subject
>     Products manufactured after January 1, 2002;
>
> b.  store credit for 50% of the purchase price
>     for non-MALM Subject Products manufactured
>     before January 1, 2002; or
>
> c.  store credit for $50 if the original price
>     cannot be identified.

The CAP stated that IKEA would notify customers by issuing a
joint press release with the CPSC, posting recall notices in
stores, posting recall notices on social media platforms using
its "top tier" social media accounts, sending recall notices to
consumers and retailers, and sending emails to purchasers of the
subject products.

After learning about more injuries and another death
from a dresser tip-over, IKEA re-announced the recall on
November 21, 2017 ("2017 recall") which subjected 17.3 million
dressers to the recall and again instructed consumers to
"immediately stop using any recalled chest or dresser that is
not properly anchored to the wall and place it in an area that

-5-

children cannot access."  The 2017 recall again provided
information on how to contact IKEA to obtain a refund or a
wall-anchoring kit.  IKEA continues to implement the recall, and
customers can still return or get free assistance in anchoring
furniture that is subject to the recall.

On May 30, 2015, Meyers purchased a MALM dresser for
149 dollars and a MALM chest for 179 dollars in New York that
are both subject to the 2016 recall.  Although IKEA had access
to Meyer's email address because she was a member of their
loyalty program by 2016, IKEA could not identify her as a
purchaser of recalled furniture and therefore did not contact
her directly about the recall.  In addition, IKEA did not send
Meyers emails because she had opted out of receiving marketing
emails from the company.  She now lives in North Carolina.

Meyers alleges that IKEA was negligent and deceptive
in how it planned and implemented the 2016 recall.  She claims
that IKEA tried to limit the recall's participation rate, in
part, by intentionally failing to notify affected customers and
confusing customers with unclear messaging about the recall.

III

Meyers claims that IKEA violated the UTPCPL by failing
to notify plaintiffs of the recall and failing to comply with
its terms.  UTPCPL provides a private right of action for any
person who:  (1) "purchases or leases goods or services

-6-

primarily for personal, family or household purposes" and

(2) "suffers any ascertainable loss of money or property, real

or personal" (3) due to unfair methods of competition or other

unfair or deceptive acts and practices covered by the law.

73 Pa. Stat. Ann. § 201-9.2.  In addition to the behaviors

enumerated in the law, these acts and practices can include

"[e]ngaging in any other fraudulent or deceptive conduct which

creates a likelihood of confusion or of misunderstanding."

73 Pa. Stat. Ann. § 201-2.  The losses suffered by the plaintiff

cannot be speculative.  Kaymark v. Bank of America, N.A.,

783 F.3d 168, 180 (3d Cir. 2015).

        To succeed in a UTPCPL action, a plaintiff "must

identify the specific act, omission or misrepresentation" of a

defendant's conduct.  Doherty v. Allstate Indem. Co., 2016 WL

5390638, at *6 (E.D. Pa. Sept. 27, 2016).  A plaintiff must also

meet the causation requirement by showing "justifiable reliance,

not simply a causal connection between the misrepresentation and

the harm."  Hunt v. U.S. Tobacco Co., 538 F.3d 217, 222

(3d Cir. 2008).  The justifiable reliance requirement applies to

all provisions of the UTPCPL.  Id. at 224.  A plaintiff can

establish justifiable reliance by showing that he or she "acted,

or failed to act, in response to and as a result of the

defendant's wrongful conduct."  Mellish v. CACH, LLC, 2020 WL

1472405, at *5 (W.D. Pa. March 26, 2020).  Both Pennsylvania and

-7-

out-of-state plaintiffs can bring an action against a
Pennsylvania defendant under the UTPCPL.  See Almond v. Janssen
Pharms., Inc., 337 F.R.D. 90, 95 (E.D. Pa. 2020).

Meyers also asserts that IKEA carried out the recall
negligently.  Unlike her claim under the UTPCPL, Meyers's
negligence claim is not limited to the substantive law of
Pennsylvania.

IV

Before a class can be certified, a plaintiff must
first establish an ascertainable class that can be defined using
objective criteria and determined using reliable and
administratively feasible methods.  See Byrd v. Aaron's Inc.,
784 F.3d 154, 163 (3d Cir. 2015).

An ascertainable class may be certified only if the
plaintiff can satisfy the four requirements of Rule 23(a) of the
Federal Rules of Civil Procedure:

> (1) the class is so numerous that joinder of
> all members is impracticable;
>
> (2) there are questions of law or fact
> common to the class;
>
> (3) the claims or defenses of the
> representative parties are typical of the
> claims or defenses of the class; and
>
> (4) the representative parties will fairly
> and adequately protect the interests of the
> class.

The elements of this four-part test are known as numerosity, commonality, typicality, and adequacy of representation.  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997).

In addition to the prerequisites of Rule 23(a), a plaintiff must also satisfy one of the requirements under Rule 23(b).  Meyers seeks to certify a class only under Rule 23(b)(3), which permits class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence.  In re Modafinil Antitrust Litig., 837 F.3d 238, 248 (3d Cir. 2016); Kelly v. RealPage Inc., 47 F.4th 202, 209 (3d Cir. 2022).  To determine if the requirements of Rule 23 have been satisfied, a district court must conduct a "rigorous analysis" that looks beyond the pleadings.  Id. at 248–49.  To conduct this analysis the court "may have to venture into the territory of a claim's merits and evaluate the nature of the evidence."  Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 (3d Cir. 2011), opinion reinstated in part, No. 09-3105, 2012 WL 2052685 (3d Cir. Apr. 17, 2012).

V

As noted above, the court must first determine whether the proposed class is ascertainable.  See Byrd, 784 F.3d at 163. To be ascertainable, the class must be "defined with reference to objective criteria," and there must be "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."  Id.

Meyers proposes a class that consists of every IKEA customer in the United States and its territories:  (1) who had no notice of the recall prior to May 6, 2020; (2) who possesses at least one IKEA chest or dresser subject to the recall at the time of class notice; and (3) for whom IKEA had an email address as of October 7, 2022.  She argues that this is an ascertainable class because it relies on four objective criteria:  (1) whether IKEA has an email address on file for the proposed class member; (2) whether IKEA has a record of sending an email notice of the recall to that email address; (3) whether the proposed class member was aware of the recall prior to the filing of this lawsuit; and (4) whether the proposed class member still possesses a recalled dresser.

Meyers maintains that the first two criteria--whether IKEA had an email address on file and record of sending an email to a proposed class member--can be determined using IKEA records.  IKEA counters that plaintiff's proposed method would

-10-

impose a serious administrative burden.  IKEA would need to search manually for each proposed class member in its database for a list of email contact between the company and customer. Then IKEA would need to manually review potentially thousands of entries for each result to determine whether the company emailed a customer about the recall.  There is no computerized system available to make these comparisons.

The court disagrees that this burden on IKEA renders the class unascertainable.  Our Court of Appeals has previously found that ascertainability is not defeated simply because a defendant's lack of records or record-keeping system "makes it more difficult to ascertain members of an otherwise objectively verifiable class."  Hargrove v. Sleepy's LLC, 974 F.3d 467, 482 (3d Cir. 2020).  See also Kelly v. RealPage Inc., 47 F.4th 202, 223 (3d Cir. 2022).  Furthermore, the Court stated that a defendant's objection "to the number of records that must be individually reviewed . . . is essentially an objection to the size of the class, which we stated explicitly in Byrd is not a reason to deny class certification."  Kelly, 47 F.4th at 224–25 (citing Byrd, 784 F.3d at 171).  Consequently, the class is not unascertainable simply because IKEA's recordkeeping system would require it to review a significant number of records to identify the customers it contacted about the recall.

The class members are defined as not having been aware of the recall before this lawsuit was filed on May 6, 2020.  To ascertain who they are, Meyers proposes that IKEA send emails to customers in their database who they had not previously contacted.  Those customers who make a sworn statement that they did not receive any other notice of the recall would be part of the proposed class.  IKEA counters that a class based on affidavits alone is not sufficiently ascertainable.  It cites Carrera v. Bayer Corporation, in which our Court of Appeals held that affidavits alone from proposed class members do not satisfy the ascertainability requirement.  727 F.3d 300, 309 (3d Cir. 2013).

For the use of affidavits to meet the ascertainability requirement, there must either be a rigorous method for screening fraudulent affidavits, or the affidavits should be supplemented with additional "records or other reliable and administratively feasible means."  City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc., 867 F.3d 434, 441 (3d Cir. 2017); id.  Our Court of Appeals required, for example, "thousands of pages of contracts, driver rosters, security gate logs, and pay statements" in addition to affidavits to determine a class of full-time drivers for a corporate defendant.  See Hargrove, 974 F.3d at 470, 480.

Meyers has not cited any evidence to supplement affidavits beyond the email addresses IKEA has on file.  It is particularly important to have additional evidence here because customers were not notified about the recall only via emails. CPSC and IKEA relied on a multifaceted notice program that included press releases, in-store recall notices, and social media posts in addition to emails sent to affected customers. Proposed class members may have been notified about the recall through a method other than email but not remember that they received notice at some point over the past six years.  In effect, the purported class members must prove a negative--that they did not receive notice of the recall, whether by email or otherwise.  A purported class member's memory alone is not sufficiently reliable for this purpose, and Meyers has not offered additional evidence that could prove lack of notice. Accordingly, the class is unascertainable.

VI

Assuming the class can be ascertained, the court now turns to the Rule 23 factors for determining whether the class should be certified.

A. Numerosity

Rule 23(a)(1) provides that numerosity is established when "the class is so numerous that joinder of all members is impracticable."  There is no fixed minimum number of plaintiffs

needed to satisfy the numerosity requirement.  <u>In re Modafinil</u>,
837 F.3d at 249.  The general rule is that a class of more than
forty members is numerous, while a class of fewer than twenty
members lacks numerosity.  <u>See id.</u> at 250.

A plaintiff must "be prepared to prove that there are
<u>in fact</u> sufficiently numerous parties."  <u>Hayes v. Wal-Mart
Stores, Inc.</u>, 725 F.3d 349, 357 (3d Cir. 2013) (quoting <u>Wal-Mart
Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350 (2011)).

> Of course, Rule 23(a)(1) does not require a
> plaintiff to offer direct evidence of the
> exact number and identities of the class
> members. But in the absence of direct
> evidence, a plaintiff must show sufficient
> circumstantial evidence specific to the
> products, problems, parties, and geographic
> areas actually covered by the class
> definition to allow a district court to make
> a factual finding.

<u>Id.</u> (quoting <u>Marcus v. BMW of N. Am., LLC</u>, 687 F.3d 583, 596
(3d Cir. 2012)).

It is undisputed that IKEA sold over 17 million chests
and dressers that are subject to the recall, as evidenced by the
company's recall announcements.  Furthermore, IKEA has millions
of customer email addresses on file, including millions of email
and street addresses for customers who opted out of receiving
marketing communications from IKEA or were never contacted by
IKEA for other reasons.  Accordingly, the court finds that

-14-

Meyers has come forward with circumstantial evidence of numerosity.

### B. Commonality

To establish commonality, "[t]he bar is not high." In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., 795 F.3d 380, 393 (3d Cir. 2015).  It "does not require identical claims or facts among class member[s]."  Marcus, 687 F.3d at 597 (alteration in original) (citation omitted).  A single common question is sufficient.  See Dukes, 564 U.S. at 359.  In fact, "as long as all putative class members were subjected to the same harmful conduct by defendant, Rule 23(a) will endure many legal and factual differences among the putative class members." In re Cmty. Bank, 795 F.3d at 397.

Meyers argues that commonality has been met because all members of the proposed class:  (1) possess chests or dressers subject to the recall; (2) did not receive the benefits promised by the recall; and (3) did not receive notice of the recall prior to the filing of this lawsuit.  IKEA contends that the class lacks commonality because each member would need to show reliance and causation to succeed in their legal claims, which would require numerous individual inquiries.  Although the court agrees that IKEA's arguments are relevant for the predominance analysis below, these differences do not defeat the commonality requirement.  The proposed class members consist of

all those who purchased items subject to the recall but did not
receive its benefits due to lack of notice from IKEA.
Accordingly, the court finds that the commonality requirement
has been met.

### C. Typicality

The third prong of the Rule 23(a) analysis,
typicality, requires that "the claims of the class
representatives must be typical of the class as a whole."
<u>Johnston v. HBO Film Mgmt., Inc.</u>, 265 F.3d 178, 184 (3d Cir.
2001).  Typicality ensures "that the class representatives are
<u>sufficiently similar</u> to the rest of the class--in terms of their
legal claims, factual circumstances, and stake in the
litigation" and that their representation is fair to the rest of
the class.  <u>In re Schering Plough Corp. ERISA Litig.</u>, 589 F.3d
585, 597 (3d Cir. 2009) (emphasis added).

To determine whether a plaintiff is sufficiently
similar to the class, courts consider

> three distinct, though related, concerns:
> (1) the claims of the class representative
> must be generally the same as those of the
> class in terms of both (a) the legal theory
> advanced and (b) the factual circumstances
> underlying that theory; (2) the class
> representative must not be subject to a
> defense that is both inapplicable to many
> members of the class and likely to become a
> major focus of the litigation; and (3) the
> interests and incentives of the
> representative must be sufficiently aligned
> with those of the class.

Id. at 599.

This comparative analysis does not require that class members have identical legal theories and factual circumstances. Id. at 598.  Instead, there simply must be enough similarity "so that maintaining the class action is reasonably economical and the interests of the other class members will be fairly and adequately protected in their absence."  Id.  Furthermore, "[i]f a plaintiff's claim arises from the same event, practice or course of conduct that gives rise[] to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class."  Marcus, 687 F.3d at 598 (citing Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992)) (quoting 1 Herbert B. Newberg, Newberg on Class Actions § 3.15, at 168 (2d ed. 1985)).

Meyers, like the other proposed class members, claims she possesses a recalled dresser but has not received a refund because IKEA did not notify her of the recall.  Furthermore, she and all other class members are seeking relief under the same UTPCPL and negligence theories.  Factual differences between the purported class members "will not render that claim atypical" because the members will assert the same UTPCPL and negligence

theories resulting from IKEA's course of conduct in implementing
the recall.  Id.

IKEA contends that Meyers is markedly different from
the proposed class because she has admitted to visiting the IKEA
website and stores, where signage about the recall was
prominently posted, and is therefore vulnerable to a unique
defense that she received actual or constructive notice of the
recall.  In Beck v. Maximus, Inc., our Court of Appeals stated
that "[a] proposed class representative is neither typical nor
adequate if the representative is subject to a unique defense
that is likely to become a major focus of the litigation.  457
F.3d 291, 301 (3d Cir. 2006).  A unique defense could cause the
representative's interest to diverge from "those of the class,
and the representative might devote time and effort to the
defense at the expense of issues that are common and controlling
for the class."  Id. at 297.  IKEA has not shown that Meyers is
subject to a unique defense that is likely to become a major
focus of the lawsuit.  The court finds that the typicality
requirement has been met.

D. Adequacy of Representation

The final requirement under Rule 23(a) is that "the
representative parties will fairly and adequately protect the
interests of the class."  Fed. R. Civ. P. 23(a)(4).  The court
"primarily examines two matters:  the interests and incentives

-18-

of the class representatives, and the experience and performance
of class counsel." In re Cmty. Bank, 795 F.3d at 393. "The
principal purpose of the adequacy requirement is to determine
whether the named plaintiffs have the ability and the incentive
to vigorously represent the claims of the class." Id. As our
Court of Appeals has explained, "the linchpin of the adequacy
requirement is the alignment of interests and incentives between
the representative plaintiffs and the rest of the class." Id.
(citation omitted).

Meyers argues that both prongs of the adequacy test
have been met because she shares the interests of the class and
has retained counsel with significant experience representing
classes with consumer protection claims. IKEA does not dispute
these arguments. The court finds that the adequacy of
representation requirement has been met.

VII

In addition to meeting the Rule 23(a) requirements,
Meyers must also satisfy the predominance and superiority
requirements of Rule 23(b)(3).

A. Predominance

The predominance requirement ensures "proposed
classes are sufficiently cohesive to warrant adjudication by
representation." Marcus, 687 F.3d at 600 (quoting Amchem
Prods., 521 U.S. at 623). The court must "examine each element

-19-

of a legal claim" and decide whether they are "capable of proof
at trial through evidence that is common to the class rather
than individual to its members."  Id. (quoting In re Hydrogen
Peroxide Antitrust Litig., 552 F.3d 305, 311–12 (3d Cir. 2008)).
"If issues common to the class overwhelm individual issues,
predominance should be satisfied."  Neale v. Volvo Cars of
N. Am., LLC, 794 F.3d 353, 371 (3d Cir. 2015) (citation
omitted).

     Meyers argues that the predominance requirement has
been met because common issues among the class members--mainly,
how IKEA's implementation of the recall affected members'
ability to receive its benefits--predominate over individual
issues.  IKEA contends that predominance is not met because
class members need to show reliance and causation, both of which
require individualized inquiries, to succeed under UTPCPL and
negligence theories.  See Hunt v. U.S. Tobacco Co., 538 F.3d
217, 221 (3rd Cir. 2008) (citation omitted).

     For this reason, our Court of Appeals has repeatedly
denied class certification when purported class members raise
claims with a causation or reliance requirement that results in
individual inquiries.  See, e.g., Marcus, 687 F.3d at 604;
Barnes v. Am. Tobacco Co., 161 F.3d 127, 145–46 (3d Cir. 1998);
Georgine v. Amchem Prods., Inc., 83 F.3d 610, 628.  Furthermore,
our district has often rejected class certification for UTPCPL

-20-

claims because each individual member would need to prove
justifiable reliance on the defendant's conduct.  See, e.g.,
Kondratick v. Beneficial Consumer Discount Co., 2006 WL 305399,
at *7 (E.D. Pa. Feb. 8, 2006); Markocki v. Old Republic Nat'l
Title Ins. Co., 2015 WL 3421401, at *6 (E.D. Pa. May 27, 2015);
Abraham v. Owen Loan Servicing, LLC, 321 F.R.D. 125, 193 (E.D.
Pa. 2017).

       The court agrees that predominance is not met because
the claims would require significant individualized inquiry.
Class members would need to show, for example, when IKEA gained
access to their contact information and prove that they did not
receive notice of the recall via email, social media posts, news
announcements, in-person visits to IKEA stores, or some other
method.  In addition, they would need to show that lack of
notice from IKEA was the reason they did not participate in the
recall and that there was no other reason that they chose not to
participate.  Given the amount of individualized inquiry
required for these claims, individualized evidence--rather than
evidence common to the class--would be necessary at trial.
Accordingly, the predominance requirement has not been
established.

       Furthermore, IKEA argues that predominance is not met
because a national negligence class would require applying the
laws of 50 state jurisdictions and the District of Columbia as

-21-

well as those of United States territories.  Clearly, "there is
no uniform cause of action that applies nationwide" for
negligence.  Adams Pointe I, L.P. v. Tru-Flex Metal Hose Corp.,
2020 WL 4199557, at *10 (W.D. Pa. July 17, 2020), aff'd, 2021 WL
3612155 (3d Cir. Aug. 16, 2021).   When deciding a substantive
state law matter, a federal court exercising supplemental
jurisdiction must "perform a choice-of-law analysis to determine
which state's substantive law applies." Chin v. Chrysler LLC,
538 F.3d 272, 278 (3d Cir. 2008).  A federal court sitting in
diversity must apply the forum state's choice-of-law rule.
Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).
Pennsylvania's choice of law rule requires the court to
determine whether a conflict exists between competing state laws
and, if so, "which state has a greater interest in having its
law applied."  LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1072
(3d Cir. 1996).

        For a nationwide class with negligence claims, the
court would need to assess, at minimum, which state's law would
apply for each state represented in the class.  Meyers would
then have the burden to show that IKEA was negligent with
respect to each and every class member.  The proposed class
would lack the necessary cohesion to "warrant adjudication by
representation." Marcus, 687 F.3d at 600 (quoting Amchem

Prods., 521 U.S. at 623).  As a result, the predominance
requirement is not met for this additional reason.

### B. Superiority

Finally, Rule 23(b)(3) requires that class treatment
be "superior to other available methods for fairly adjudicating
the controversy."  The superiority requirement weighs whether
"in terms of fairness and efficiency, the merits of a class
action" outweigh "those of alternative available methods of
adjudication."  In re Cmty. Bank, 795 F.3d at 409.  The court
must analyze the following factors:

> the class members' interest in individually
> controlling the prosecution of separate
> actions;
>
> the extent and nature of any similar
> litigation already commenced by class
> members;
>
> the desirability of concentrating the
> litigation in a particular forum; and
>
> the difficulties likely to be encountered in
> the management of a class action.

Id. at 408-09 (citing Fed R. Civ. P. 23(b)(3)).

Here, there is no evidence that the first two factors
would hinder class certification.  IKEA argues that class action
is not superior to the remedies offered by the existing recall
because proposed class members can still obtain refunds from
IKEA and the recall promotes safety.  In Amalgamated Workers
Union of Virgin Islands v. Hess Oil Virgin Islands Corp., our

-23-

Court of Appeals signaled that administrative remedies should
not be considered as an alternative to judicial remedies under a
Rule 23(b)(3) analysis.  478 F.2d 540, 579 (3d Cir. 1973).  The
Court stated:

> As we view it, it would appear that [Rule
> 23(b)(3)] was not intended to weigh the
> superiority of a class action against
> possible administrative relief. The
> "superiority requirement" was intended to
> refer to the preferability of adjudicating
> claims of multiple-parties in one judicial
> proceeding and in one forum, rather than
> forcing each plaintiff to proceed by
> separate suit, and possibly requiring a
> defendant to answer suits growing out of one
> incident in georgraphically separated
> courts.

Id.

The Court left "this question, however, for
disposition in an appropriate case." Id.  Furthermore, district
courts have occasionally recognized automotive recalls
implemented in coordination with the National Highway Traffic
and Safety Administration as administrative remedies that are
superior to class actions.  See, e.g., Martin v. Ford Motor Co.,
292 F.R.D. 252, 282-84 (E.D. Pa. 2013).  Thus, the question of
whether administrative remedies should be considered in a Rule
23(b)(3) analysis remains unanswered.

Regardless, Meyers is seeking broader relief than what
is available under this recall.  The recall only offers full
refunds consumers who purchased chests and dressers manufactured

-24-

between January 2002 and June 2016.  Meyers is seeking a full refund for all purported class members and all other available remedies, including interest and delay damages.  Consequently, the relief offered under this recall is not comparable to that which could be awarded in a lawsuit.

IKEA convincingly argues that Meyers's proposed class is unmanageable.  The need for individual inquiries into causation and reliance undermine any benefit class treatment could provide.  Since Meyers cannot establish causation or reliance with class-wide proof, the court would need to hold hearings for each individual plaintiff to demonstrate these elements.  These types of "[c]omplicated mini-litigations on factual issues . . . would not be an efficient use of the class action device."  Mwantembe v. TD Bank, N.A., 268 F.R.D. 548, 562 (E.D. Pa. 2010) (quoting Danvers Motor Co. v. Ford Motor Co., 543 F.3d 141, 149 (3d Cir. 2008) (quotation marks omitted).

The negligence claims in this proposed class action pose additional case management issues because, as noted above, there is not a single, nationwide cause of action for negligence.  See Adams Pointe I, L.P., 2020 WL 4199557 at *10. As discussed in Powers v. Lycoming Engines:

> A single nationwide class action is
> unmanageable when the law of many different
> jurisdictions must be applied. In re
> Bridgestone/Firestone, Inc., 288 F.3d at
> 1018. Given the difficult, if not,

> impossible burden of instructing the jury on
> the different laws of several states, a
> nationwide class action can not pass the
> superiority test. In re American Medical
> Sys., Inc., 75 F.3d 1069, 1085
> (6th Cir.1996). Nevertheless, a
> nationwide class action can still be
> certified when the differences between state
> laws are relatively minor, and those
> differing state laws can be grouped
> accordingly to apply them as a unit. In re
> Prudential Ins. Co. Am. Sales Practice
> Litig. Agent Actions, 148 F.3d 283, 315 (3d
> Cir.1998).

272 F.R.D. 414, 427 (E.D. Pa. 2011).  The class action here

cannot be certified unless the court finds that there are

sufficiently minor differences in state negligence laws across

all states and territories.

State negligence laws, however, have significant

differences.  Some jurisdictions apply pure contributory

negligence, which prohibits plaintiffs who are at fault from

receiving damages.  See, e.g., Ala. R. Civ. P. 8.  Other

jurisdictions apply modified comparative negligence laws with

different fault thresholds, allowing plaintiffs who are less

than 50 or 51 percent at fault to recover damages.  See, e.g.,

42 Pa. Cons. Stat. § 7102.  Still others apply pure comparative

negligence, which does not bar plaintiffs from recovering

regardless of how at fault they are for their damages.  See,

e.g., Wash. Rev. Code § 4.22.005.  One state even applies a

hybrid approach that combines aspects of contributory and

comparative negligence.  S.D. Codified Laws § 20-9-2.  Even if
class members could introduce common evidence of IKEA's
negligence, these differences across jurisdictions affect
whether a purported class member can recover and what defenses
IKEA can raise.

Meyers, for example, purchased two recalled items from
an IKEA in New York, but she currently lives in North Carolina
and is bringing this lawsuit in Pennsylvania.  All three states
follow different approaches to negligence:   New York applies
pure comparative negligence; North Carolina follows a pure
contributory negligence approach; and, as noted above,
Pennsylvania applies a modified comparative negligence law with
a 51 percent fault threshold.  N.Y.C.P.L.R. 1411; Smith v. Fiber
Controls Corp., 268 S.E.2d 504, 509 (N.C. 1980); 42 Pa. Cons.
Stat. § 7102.  For Meyers alone, the court would need to assess
whether New York, North Carolina, or Pennsylvania has the
greatest interest in having its negligence law applied.  The
court takes judicial notice that countless other purported class
members have undoubtedly moved to states other than where they
originally purchased the IKEA furniture.

Given the individual inquiries necessary to determine
causation and reliance for each claim and the potential conflict
of laws issues raised by the negligence claims, "[t]here are
simply too many uncommon issues" to achieve the economies of

time that class treatment is meant to provide.  Georgine v.
Amchem Prods., Inc., 83 F.3d 610, 632 (3d Cir. 1996).
Accordingly, the superiority requirement has not been met.

VIII

In sum, Meyer's proposed class does not satisfy the
threshold ascertainability requirement.  Although the court
finds that Meyers has demonstrated numerosity, commonality,
typicality, and adequate representation, the four Rule 23(a)
factors, she has not shown that her proposed class satisfies the
Rule 23(b)(3) requirements of predominance and superiority.  The
court will deny Myers's motion for class certification.

Without class certification, the individual claim of
Samantha Meyers related to her purchases of recalled furniture,
totaling $328, does not satisfy the necessary amount in
controversy under 28 U.S.C. § 1332(a).  Accordingly, the court
will dismiss this action for lack of subject matter
jurisdiction.